## FRANKLIN E. NEUMANN v. CAROLINE R. NEUMANN

SUPERIOR COURT    FAIRFIELD COUNTY    FILE No. 72311

Memorandum filed June 26, 1946.

*David Lessler,* of Bridgeport, for the Plaintiff.

*Keogh & Candee,* of South Norwalk, for the Defendant.

ALCORN, J, The plaintiff seeks a partition of certain real estate or, if a partition cannot equitably be had, then a sale and a division of the proceeds, according to the rights of the parties. The defendant's answer admits that she and the plaintiff are owners and tenants in common of the real estate in question but denies that each has an undivided one-half interest in the property. The defendant further files a cross-complaint alleging a conveyance by her to the plaintiff of a half interest in the land and her expenditure of substantial sums for the construction of a house and garage on the property and that both the conveyance and the expenditures were upon a consideration of love and affection which has failed, wherefore the defendant seeks a reconveyance of the plaintiff's half interest in the premises and such other relief as equity may afford.

The parties were married on September 4, 1932. The defendant is a woman of considerable experience in real estate matters. On March 18, 1941, she purchased the property described in the complaint, taking title by warranty deed in her own name. Following the purchase the parties occupied the property as a home. The purchase price was $9000, composed of a cash payment of $3000 and a purchase money mortgage of $6000. On June 14, 1943, the dwelling burned down and the defendant collected $5500 fire insurance. On July 6, 1943, the defendant executed a quitclaim deed in the usual form conveying an undivided half interest in the premises to the plaintiff. The deed recited a consideration of love and affection and was prepared and executed at the defendant's own initiative and volition without any request or suggestion upon the plaintiff's part. The defendant delivered the deed to the plaintiff: On July 30, 1943, the defendant paid off the purchase-money mortgage on the property and it was released of record. The plaintiff did not record his quitclaim deed until October 27, 1943.

During all of the time referred to the parties were living happily together as husband and wife and were using the property in connection with a sand, gravel, and equipment renting business conducted under the name of the Neumann Gravel Company, of which the plaintiff is president, treasurer, and largest stockholder.

On March 4, 1944, the plaintiff entered the armed forces, giving the defendant a power of attorney to exercise his functions as an officer of the Gravel Company to contract, collect

and deposit funds, draw checks, pay bills, buy, sell and rent equipment, take liability and fire insurance, and settle losses. After the plaintiff entered the service the defendant decided to build a new dwelling on the property and began construction in July, 1944. In connection therewith she issued personal checks of her own and, in some instance, checks of the Neumann Gravel Company. She found it necessary, however, to borrow additional moneys to complete the construction and from August to October, 1944, she obtained a total of $3500 in three installments from a woman friend. On January 2, 1945, the defendant individually gave a note for this loan secured by a mortgage upon the property signed only by the defendant.

The plaintiff remained in the service until December 9, 1945. During all this period the affectionate relations between the parties continued. They corresponded and, when opportunity offered, the plaintiff came home on leave. He was aware of and approved of the construction of the house but he was not aware until a later date of the mortgage given by the defendant.

After the plaintiff came out of the service friction developed between the parties and they are now separated. In January, 1946, the defendant sued the plaintiff for a divorce. In arguments which occurred during this period the defendant demanded that the plaintiff sign the $3500 mortgage she had given and he refused. This was plaintiff's first knowledge of the mortgage and he thereupon examined the land records but could find no record of it. Thereupon, he brought this action by writ and complaint dated February 14, 1946. Learning to whom the mortgage had been given, however, he communicated with the mortgagee by letter and she confirmed the fact. The mortgagee in turn then discovered that the mortgage had not been recorded and she then had it recorded on March 6, 1946.

The fact that these parties are owners and tenants in common of the premises being admitted, the dispute is over the nature of the transaction by which the relation was created and the rights arising as a result. The plaintiff claims a gift. The defendant claims a transfer for a consideration of love and affection which has failed, nd an express agreement between the parties concerning the erection of the house which would entitle the defendant, upon a partition and sale, to a credit for her share of the improvement.

In view of the relations between the parties which existed when plaintiff's half interest was coveyed to him and which continued for about a year and a half thereafter there would be no failure of consideration, if that factor were material to the court's view of the case. The situation disclosed here, however, is that of a gift for which a consideration is unnecessary. The quitclaim deed, being between husband and wife, was presumptively a gift. Coogan v. Lynch, 88 Conn. 114, 117. Furthermore, the circumstances establish that it was the defendant's intention to make, and that she in fact did make, a gift to the plaintiff. The gift was complete upon execution and delivery of the deed on July 6, 1943, and thereafter each owned an undivided half interest in the property.

Thereafter, when the defendant undertook to erect a dwelling it became a part of the freehold, enhancing the plaintiff's as well as the defendant's interest, inasmuch as there was no agreement to the contrary between them. Baldwin v. Breed, 16 Conn. 60. The reasons why this should be so are fully argued in the opinion in that case and the principle has been reiterated in varying situations since. Rayhol Co. v. Holland, 110 Conn. 516, 522; Ward v. Ives, 91 Conn. 12, 21; Brady v. Brady, 86 Conn. 199, 207; Husted's Appeal, 34 Conn. 488, 495; Frank v. Branch, 16 Conn. 259, 271. Consequently when the defendant erected the house she is presumed to have intended, since there is no evidence to the contrary, that the plaintiff should have an equal ownership in it as well as in the land. Brady v. Brady, supra. Rights which then became established cannot now be altered because of a subsequent rupture of what was at the time a happy marital relation.

The legal title to these premises being thus vested in these two people as tenants in common, the plaintiff is entitled to a decree of partition or a sale. Scovil v. Kennedy, 14 Conn. 349, Johnson v. Olmsted, 49 Conn. 509; General Statutes, §§ 5922, 5927. The land is roughly "L"-shaped, and about half rolling ground and half woodland. The end of one arm of the "L" abuts the highway and the house and barn are situated in this arm. The other arm of the "L" is surrounded by abutting private property. Consequently the premises do not lend themselves to a partition, and a sale and division of the proceeds is the alternative.

As previously indicated, the mortgage given by the defendant was not of record when this action was brought and the mortgagee is therefore not a party to this action. This mortgage is not an incumbrance upon the plaintiff's half interest in the property but the mortgagee should be protected in connection with the sale. *Rentz* v. *Eckert,* 74 Conn. 11.

No suggestion was made at the trial, and no hearing was held as to the identity of a committee to make the sale. If the parties are able to stipulate upon this point they may do so, otherwise the court will, upon request, hear them upon the question at a convenient time.

Subject to and upon the determination of the identity of a committee of sale, a decree may be entered directing a sale of the property subject to the mortgage of $3500 held by Eddis Kelley as of record; and directing that the proceeds of such sale shall be paid into court for disposition in accordance with § 5929 of the General Statutes.